UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SATOS CAMACHO CARDOZA,

    Plaintiff,

    v.                                        Case No. 20-CV-264

KILOLO KIJAKAZI,
Acting Commissioner of Social Security[1],

    Defendant.

## DECISION AND ORDER

Satos Camacho Cardoza seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is affirmed, and the case is dismissed.

## BACKGROUND

On September 2, 2016, Cardoza filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for SSI. (Tr. 21.) In both applications, Cardoza alleged disability beginning on April 29, 2016 (*id.*) due to "diabetes type 2 pain in all over body" (Tr. 283). Cardoza's applications were denied initially and upon reconsideration. (Tr. 21.) Cardoza filed a request for a hearing, and a hearing was held before

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's recent appointment as acting commissioner.

an Administrative Law Judge ("ALJ") on March 5, 2019. (Tr. 43–64.) Cardoza testified at the hearing, as did Jacquelyn Wenkman, a vocational expert. (Tr. 21, 43.)

In a written decision issued April 18, 2019, the ALJ found that Cardoza had the severe impairments of degenerative disc disease, degenerative joint disease of the right hip, bilateral shoulder disorder, diabetes mellitus, neuropathy of the hands, asthma, obstructive sleep apnea, obesity, and depression. (Tr. 23–25.) The ALJ found that Cardoza did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 25–28.) The ALJ further found that Cardoza had the residual functional capacity ("RFC") to perform light work, with the following limitations: can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds; can occasionally reach overhead bilaterally, but frequently handle and finger bilaterally; can have occasional exposure to extreme cold, dusts, fumes, odors, gases, poor ventilation, other pulmonary irritants, and hazards such as unprotected heights or dangerous moving machinery; is limited to simple and routine tasks; can maintain concentration for 2-hour periods; can have occasional interaction with coworkers, supervisors, and the public; and can adapt to changes within a routine work setting. (Tr. 28.)

While the ALJ found that Cardoza was unable to perform his past relevant work, the ALJ determined that given his age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that he could perform. (Tr. 33–35.) As such, the ALJ found that Cardoza was not disabled from April 29, 2016 through the date of the decision. (Tr. 35.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Cardoza's request for review. (Tr. 1–8.)

# DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to This Case*

Cardoza argues that the ALJ's physical and mental RFC determinations are not supported by substantial evidence, as the ALJ relied on the outdated opinions of non-examining State Agency consultants who did not address new and significant evidence

3

regarding his impairments. (Pl.'s Br., Docket # 12.) As such, Cardoza contends, remand is required to obtain consultative examinations in order to properly assess his physical and mental limitations. (*Id.*)

As for Cardoza's physical RFC, State Agency medical consultant Bernard Stevens, M.D. opined on March 9, 2017 that Cardoza could perform medium work. (Tr. 89–90, 106–07.) On June 28, 2017, the State Agency medical consultant at the reconsideration level, George Walcott, M.D., opined that Cardoza could perform light work. (Tr. 124–25, 141–42.) The ALJ assigned Drs. Stevens and Walcott's opinions great weight because they were generally consistent with the record evidence at the time of their respective opinions. (Tr. 32.) However, the ALJ noted that more recent evidence regarding Cardoza's worsening diabetes, increasing BMI, and degenerative disc disease warranted additional postural and manipulative limitations. (*Id.*)

Cardoza argues that the ALJ's reliance on Drs. Stevens and Walcott's opinions was error because the medical consultants did not consider evidence related to his severe impairments of degenerative disc disease and degenerative joint disease. (Pl.'s Br. at 13.) Consequently, he argues, the record contained no medical opinion that translated the raw medical data related to his degenerative diseases into functional limitations, and the ALJ was not qualified to interpret this evidence without the benefit of a consultative examination. (*Id.* at 15.)

"An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018). In *Moreno*, the Seventh Circuit determined that remand was required based on

treatment notes from the claimant's psychologist that could have affected an earlier psychologist's initial mental health assessment. *Id.* Specifically, the court noted that while the initial assessment concluded that the claimant did not exhibit sleep disturbance or thoughts of suicide, newer treatment notes indicated that the claimant experienced both symptoms. *Id.* at 728–29. Further, while the initial assessment included only mild limitations in the claimant's social functioning, newer treatment notes revealed a history of aggressive behavior that could have warranted a finding of more than mild social functioning limitations in the initial assessment. *Id.* at 729.

Here, Cardoza points to a December 2016 MRI of his cervical and lumbar spine; a July 2018 femur X ray; treatment notes demonstrating tenderness, decreased range of motion, positive straight leg raise testing; notations of his subjective reports that medications did not alleviate his pain and of worsened pain; and the opinion of his treating provider that he was unable to work due to pain. (Pl.'s Br. at 15.) Cardoza has not demonstrated, however, that any of this evidence constitutes "significant and new developments," *Moreno*, 882 F.3d at 728, regarding his physical impairments that could have changed Drs. Stevens and Walcott's opinions.

Cardoza asserts that the State Agency medical consultants did not consider the December 2016 MRI of his cervical and lumbar spine. (Pl.'s Br. at 15.) However, Dr. Walcott expressly noted the findings of the MRI, which revealed minimal degenerative disease at C5-C6 of doubtful clinical significance and mild degenerative disc disease at L5-S1 (Tr. 677), in opining that Cardoza could perform light work (Tr. 125). As for the femur X-ray performed in July 2018 which indicated a mild right hip degenerative change with no radiographic evidence for acute abnormality (Tr. 1040), Cardoza does not explain how the results of the

5

X-ray could have changed Drs. Stevens and Walcott's opinions. As such, Cardoza's argument with respect to the July 2018 X-ray fails. *See Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017).

Further, Cardoza argues that subsequent treatment notes demonstrating tenderness, decreased range of motion, positive straight leg raise testing, worsening of pain unresponsive to medication, as well as subsequent notations from his treating physician that he was unable to work due to his back pain, was "complex raw medical data" that the ALJ was unqualified to interpret without the assistance of the State Agency consultants. (Pl.'s Br. at 15.) I disagree with Cardoza's characterization of this evidence as "complex raw medical data" that the ALJ could not interpret. To the contrary, it was the ALJ's duty to develop Cardoza's physical RFC based on the medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(3), 20 C.F.R. § 404.1546(c). While Cardoza argues that the ALJ should have ordered a consultative examination, he has not shown that his physical impairments changed so much that an additional medical opinion was warranted. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remand required where newer evaluation of claimant contained "significant, new, and potentially decisive findings" of the need for a hip replacement and evidence of spinal degeneration that could have changed non-examining physician's opinion). Accordingly, the ALJ's determination of Cardoza's physical RFC does not require remand.

Cardoza similarly challenges the ALJ's determination of his mental RFC. (Pl.'s Br. at 16.) He argues that the ALJ's mental RFC determination is not supported by substantial evidence because the ALJ, despite finding the opinions of the State Agency psychological consultants stale, nevertheless accorded the opinions great weight. (*Id.* at 17.) Cardoza argues that the ALJ should have instead referred him to a consultative examiner based on evidence

6

that his mental impairments had worsened since the State Agency psychological consultants rendered their opinions. (*Id.*)

On March 30, 2017, Esther Lefevre, Ph.D. assessed Cardoza's mental impairments and opined that while he had no limitations in the area of understanding and memory, he had moderate limitations in the areas of sustained concentration and persistence, social interaction, and adaptation. (Tr. 90–92.) Dr. Lefevre concluded that Cardoza had the ability to sustain the basic mental demands of unskilled work. (Tr. 87.) On July 6, 2017, Lisa Fitzpatrick, Psy.D. opined similar limitations. (Tr. 125–127.) While the ALJ assigned many of the opinions of Drs. Lefevre and Fitzpatrick great weight, the ALJ found the opinion that Cardoza had no understanding and memory limitations inconsistent with evidence demonstrating only fair recent and remote memory and poor orientation to person, place, and time. (Tr. 32.) The ALJ noted that Drs. Lefevre and Fitzpatrick's opinions were limited based on the records available at the time of their review. (*Id.*)

Cardoza argues that the ALJ failed to build a logical bridge from the finding that Drs. Lefevre and Fitzpatrick's opinions were stale to the conclusion that the opinions were entitled to great weight. (Pl.'s Br. at 16.) Cardoza also points to evidence that he asserts demonstrates a worsening of his mental impairments after Drs. Lefevre and Fitzpatrick's opinions, including treatment records noting abnormal affect, mood, and speech; no orientation and limited insight; hallucinations; and his subjective reports of worsening symptoms. (Pl.'s Br. at 18.)

The ALJ clearly explained how specific findings of Drs. Lefevre and Fitzpatrick were consistent with the record while their findings regarding Cardoza's understanding and memory limitations were not. Specifically, the ALJ pointed to treatment notes in the record—

7

created after Drs. Lefevre and Fitzpatrick's opinions—of fair recent and remote memory and poor orientation that warranted a finding of understanding and memory limitations. (Tr. 32, citing 1093.) Further, both Drs. Lefevre and Fitzpatrick noted in their assessments of Cardoza's mental impairments instances where he complained of worsening depression and anxiety, as well as complaints of hallucinations. (Tr. 87, 122.) Cardoza fails to explain how the evidence he cites to would have altered Drs. Lefevre and Fitzpatrick's opinions. "If an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end." *Keys*, 679 F. App'x at 481 (citing *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)). Because Cardoza has not shown new and significant developments in his mental impairments that rendered the state agency consultants' opinions outdated, I find that the ALJ did not err in relying on the opinions to determine Cardoza's mental RFC.

## CONCLUSION

While Cardoza argues that the ALJ's physical and mental RFC determinations are flawed, I find that the ALJ's decision is supported by substantial evidence. The decision is affirmed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of September, 2021.

8

Case 1:20-cv-00264-NJ   Filed 09/23/21   Page 8 of 9   Document 19

BY THE COURT

NANCY JOSEPH
United States Magistrate Judge